**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **DESTINIE KISTLER and RICHARD VALENZUELA, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**TRILOGY MANAGEMENT SERVICES, LLC,**<br><br>**Defendant.** | **Civil Action No.** 3:26-cv-156-GNS<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Destinie Kistler and Richard Valenzuela ("Plaintiffs"), through their undersigned counsel, individually, and on behalf of all other similarly situated persons, file this Collective and Class Action Complaint ("Complaint") against Defendant Trilogy Management Services, LLC ("Defendant" or "Trilogy"), seeking all available remedies under the Fair Labor Standards Act ("FLSA") and Indiana and Kentucky state law, for failure to pay all wages owed. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Trilogy is incorporated in Kentucky and headquartered and conducts business in the Western District of Kentucky, and a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

**PARTIES**

4. Plaintiff Destinie Kistler is a resident of Findlay, Ohio. Plaintiff was employed by Trilogy as a State Tested Nursing Assistant (STNA) from approximately July 2023 to February 2025 at its Heritage facility located in Ohio. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a Plaintiff in this action. *See* Exhibit A.

5. Plaintiff Richard Valenzuela is a resident of Wheatland, Indiana. Plaintiff has been employed by Trilogy as a Certified Nurse Assistant (CNA) from approximately 2023 to the present. In 2024, he transitioned to a Travel CNA and worked at several Trilogy facilities. Throughout his employment, he worked at Trilogy's Bridgepoint Health Campus, Glen Ridge Health Campus, Forest Springs Health Campus, Franciscan Healthcare Center, and the Villages at Historic Silvercrest facilities located in Kentucky and Indiana. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a Plaintiff in this action. *See* Exhibit B.

6. Defendant Trilogy Management Services, LLC ("Defendant" or "Trilogy") is a registered Delaware limited liability company with its principal place of business in Louisville, Kentucky.

7. The unlawful acts alleged in this Complaint were committed by Trilogy and/or Trilogy's officers, agents, employees, or representatives, while actively engaged in the management of Trilogy's businesses or affairs and with the authorization of Trilogy.

8. Trilogy employed Plaintiffs and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

9. During all times relevant, Plaintiffs were employees of Trilogy and covered by the

FLSA.

10. During all times relevant, Trilogy was an employer and/or enterprise covered by the FLSA.

11. At all times material to this action, Trilogy has been engaged in commerce or in the production of goods for commerce as defined by the FLSA. It provides health care services and operates healthcare facilities across at least five states; sells and markets its services across state lines and throughout the United States; uses telephonic transmissions crossing state lines to do business; accepts and utilizes products, medications and medical supplies that have shipped across state lines; and uses connected health technology and telehealth systems that allow access to its services from different locations and across state lines.

12. Trilogy's annual gross sales exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

13. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following proposed collective:

> All current and former non-exempt, hourly-paid employees of Trilogy in the United States who worked in excess of forty (40) hours in a workweek during the three (3) years prior to the filing of this Complaint (the "FLSA Collective").

14. Plaintiff Valenzula brings Count II of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All current and former non-exempt, hourly-paid employees (if they voluntarily terminated their employment) of Trilogy who worked in the state of Indiana during the three (3) years prior to the filing of this Complaint (the "Indiana Class").

15. Plaintiff Valenzula brings Count III of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All current and former non-exempt, hourly-paid employees of Trilogy who worked in the state of Indiana during the three (3) years prior to the filing of this Complaint

(the "Indiana Unjust Enrichment Class").

16. Plaintiff Valenzula brings Count IV of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All current and former non-exempt, hourly-paid employees of Trilogy who worked in the state of Kentucky during the three (3) years prior to the filing of this Complaint (the "Kentucky Class").

17. The Indiana Class, the Indiana Unjust Enrichment Class, and the Kentucky Class are together referred to as the "State Law Classes"

18. The FLSA Collective and the State Law Classes are together referred to as the "Class" and the members of the Class are "Class Members."

19. Plaintiffs reserve the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

### *Trilogy's Facilities and Management*

20. Trilogy is a privately company that operates as a large, multi-state provider of post-acute care and other healthcare services.

21. Trilogy employs over 13,000 employees and operates approximately 130 healthcare centers across five states: Ohio, Kentucky, Indiana, Michigan, and Wisconsin.

22. Trilogy operates a diverse range of facilities and services including independent living, assisted living, memory care, adult day services, skilled services, dialysis centers, and a pharmacy and lab.

23. Trilogy operates this diverse portfolio of services and facilities as a single, integrated, and centrally managed enterprise. This structure involves a top-down management approach with a central corporate office that oversees the management, operations, standards, and

strategic direction of all the facilities in its network.

24. Trilogy's employee handbook—distributed across all its facilities—states: "Trilogy has developed and streamlined comprehensive clinical operational systems for managing, monitoring, and delivering the best possible care to [its] clients."

25. Trilogy's website serves as a single, comprehensive resource for all information related to Trilogy's services across all its locations, presenting a unified brand identity to the public.

26. Trilogy's corporate LinkedIn page further confirms this centralized structure, representing its multi-state operations as a single entity and confirming a total workforce exceeding 10,000 employees.[1]

27. Trilogy maintains a centralized human resources function and has power over personnel and payroll decisions regarding Plaintiffs and Class Members. This control includes but is not limited to: the power to hire and fire employees; the authority to establish, implement, and modify wage and hour structures; the centralized processing of payroll; and the maintenance of employment and personnel records.

28. Plaintiffs' and Class Members' pay statements are all issued by Trilogy Management Services, LLC.

29. Trilogy's website advertises its open positions across all facilities in multiple states under a single "Careers" tab, demonstrating a unified approach to recruitment and hiring.[2]

30. Similarly, Trilogy utilizes centralized corporate platforms, such as LinkedIn, to recruit and post job openings for all facilities locations under the corporate umbrella.[3]

---

[1] *See* https://www.linkedin.com/company/trilogy-health-services-llc/ (last visited Dec. 16, 2025).
[2] *See* https://jobs.trilogyhs.com/ (last visited Dec. 16, 2025).
[3] See https://www.linkedin.com/company/trilogy-health-services-llc/jobs/ (last visited Dec. 16,

31. All Trilogy employees are eligible for the same employee benefits, including a single 401(k) plan with over 15,480 plan participants as of December 31, 2024. According to its Form 5500 filing, Trilogy Management Services, LLC Retirement Savings Plan (the "Retirement Plan") is a "single-employer plan." The Retirement Plan thus treats employees as part of one large entity rather than separate facility-specific groups. All Trilogy employees are eligible to participate in the Retirement Plan after reaching the age of twenty-one.

32. It is clear, based upon Trilogy's employ handbook, pay statements, website, LinkedIn page, employee benefit plan, and company policies that all Trilogy locations are subject to the same and/or similar management and policies.

***Trilogy Failed to Pay for All Hours Worked***

33. Trilogy does not pay Plaintiffs and Class Members for all hours worked and the proper overtime premiums for all hours worked in excess of forty (40) hours in a workweek.

34. Plaintiff Kistler was employed by Trilogy as a STNA from approximately July 2023 to February 2025 in Ohio.

35. Plaintiff Valenzuela has been employed by Trilogy from 2023 to the present in Indiana and Kentucky. In 2023, he worked as a CNA and then in 2024, he transitioned to a Travel CNA.

36. Plaintiffs and Class Members are non-exempt, hourly-paid employees who provide care and related activities for Trilogy's residents pursuant to Trilogy's rules, regulations, guidelines, and policies.

37. Plaintiffs and Class Members perform no job duties or functions that qualify for any FLSA or state law overtime exemption.

---

2025).

38. Plaintiffs and Class Members are similarly situated with respect to their job duties. Their duties include, but are not limited to, providing activities of daily living (*e.g.*, bathing, grooming, dressing, meals, etc.); documenting vital signs, weight, meal intake, bowel and bladder, etc.; identifying special resident problems and reporting them immediately to the nurse; taking an active role to help problem-solve to resolve the issues; reviewing resident profiles and perform nursing cares as outlined; observing infection control procedures; ensuring the resident is left in a safe environment; and ambulating and transferring resident per their transfer policy.

39. While exact job titles and duties may differ, Plaintiffs and Class Members are uniformly subjected to the same or similar illegal pay practices for similar work.

40. Given the nature of the work, Plaintiffs and Class Members regularly work more than forty (40) hours in a workweek.

41. Plaintiff Kistler worked on average sixty (60) hours per week. Plaintiff Valenzula works on average fifty-five (55) to seventy (70) hours per week. Plaintiffs observed other Class Members working similar schedules.

42. At all relevant times, Trilogy has maintained a policy and practice whereby hourly employees are encouraged and/or required to work off-the-clock during meal breaks.

43. Due to understaffing and high volumes of workload, Plaintiffs and Class Members were often required to work through meal breaks without proper compensation.

44. Plaintiff Kistler was required to work through her meal break almost every shift due to understaffing and because she was required to be caring for patients and/or charting medical information of patients. Despite working through her meal breaks, Trilogy consistently deducted thirty (30) minutes from her paychecks.

45. Plaintiff Valenzuela is required to work through his meal break almost every shift

because he is required to be caring for patients and/or charting medical information of patients. Despite working through his meal breaks, Trilogy consistently deducts thirty (30) minutes from his paychecks.

46. Plaintiff Valenzuela's experience of uncompensated work time during meal breaks was the same at the five (5) different Trilogy facilities located in both Indiana and Kentucky demonstrates that the failure to pay for time spent working through meal breaks is a result of Trilogy's uniform practices and policies.

47. Trilogy's employee handbook states that if an employee is unable to take a 30-minute, uninterrupted meal break, they must obtain prior approval from a supervisor and "[i]f you miss your meal break without prior approval from your Supervisor, you may be subject to disciplinary action."

48. While the "prior approval" policy stated in the handbook requires employees to obtain supervisor permission before missing a break to avoid "disciplinary action," the immediate and unpredictable nature of patient needs does not allow for such administrative delays. Thus, by simultaneously mandating immediate patient care while threatening discipline for unauthorized missed breaks, Trilogy maintains a coercive environment that effectively forces Plaintiffs and Class Members to volunteer their compensable time and report taking a full break—even when working—simply to avoid reprimand.

49. Consequently, Trilogy's written and operational policies (understaffing and mandatory patient care) create a *de facto* requirement to work through meal breaks off-the-clock to avoid disciplinary action.

50. Indeed, Plaintiff Kistler did not report working through her meal breaks because Human Resources, Laurie Cramer, reprimanded employees for not taking meal breaks.

51. Plaintiffs observed that other Class Members worked through their meal breaks and were similarly not compensated for their working time.

52. Plaintiffs also spoke with other Class Members about working through their meal breaks. Those Class Members told Plaintiffs that they could not take their meal breaks due to understaffing, but yet, the meal breaks were deducted from their paychecks.

53. Trilogy knew Plaintiffs and Class Members did not take thirty (30) minute uninterrupted meal breaks because Trilogy's supervisors observed Plaintiffs and Class Member work throughout their entire shifts without taking a break.

54. As a result of Trilogy policies of requiring Class Members to work-off-the-clock, Trilogy fails to keep accurate records of the hours that Plaintiffs and Class Members work and fails to provide accurate wage statements to Plaintiffs and Class Members that reflect all hours worked.

***Trilogy Willfully Violated the FLSA and State Laws***

55. Trilogy's actions in violation of the FLSA and Indiana and Kentucky state law as set forth herein were and are made willfully to avoid liability under the FLSA and state law. Such willfulness is demonstrated by, or may be reasonably inferred from, Trilogy's actions and failures to act.

56. Trilogy fails to maintain accurate records of the actual hours that Plaintiffs and Class Members worked each workday, and the total hours worked each workweek.

57. Trilogy knew or should have known that the work that they required of Plaintiffs and other Class Members should have been paid for all time working through meal breaks.

58. Trilogy is a sophisticated national business with access to knowledgeable human resource specialists and competent legal counsel who can and should advise Trilogy of their

obligations under the FLSA and state law.

59. Trilogy knew or should have known that Plaintiffs and Class Members are entitled to overtime wages for all hours worked because Trilogy classified Plaintiffs and Class Members as non-exempt under the FLSA and Indiana and Kentucky law.

60. By failing to pay all the compensation owed, including overtime compensation, to Plaintiffs and other non-exempt employees as detailed above, Trilogy acted willfully and in reckless disregard of clearly applicable FLSA and state law obligations.

61. Trilogy has not made good faith efforts to comply with the FLSA and Indiana and Kentucky state law.

## COLLECTIVE ACTION ALLEGATIONS

62. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the FLSA Collective as defined above.

63. Plaintiffs desire to pursue their FLSA claim on behalf of all individuals who opt in to this action pursuant to 29 U.S.C. § 216(b).

64. Plaintiffs and the FLSA Collective are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to Trilogy' common business and payroll practices as described herein, and, as a result of such practices, have not been paid overtime compensation due as described herein. Resolution of this action requires inquiry into common facts, including, inter alia, Trilogy's common compensation and payroll practices.

65. These similarly situated employees are known to Trilogy, readily identifiable, and can be easily located through Trilogy's business records.

66. Trilogy employs and has employed many FLSA Collective Members throughout

the United States. These similarly situated current and former employees may be readily notified of this action through U.S. mail and/or other reasonable means, and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, attorney's fees, and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

67. Plaintiff Valenzula brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Indiana Class and Kentucky Class defined above (the "State Law Classes").

68. The members of the State Law Classes are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Indiana Class and Kentucky Class.

69. Trilogy has engaged in the same conduct towards Plaintiff and the other members of the State Law Classes.

70. The injuries and damages to the State Law Classes present questions of law and fact that are common to each class member within the State Law Classes, and that are common to the State Law Classes as a whole.

71. Plaintiff will fairly and adequately represent and protect the interests of the State Law Classes, and all of its potential class members because there is no conflict between the claims of Plaintiff and those of the State Law Classes, and Plaintiff's claims are typical of the claims of the State Law Classes.

72. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

73. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions

of law and fact common to the State Law Classes predominate over any questions affecting only individual Class members including, without limitation: (1) whether Trilogy paid them for all time worked; and (2) whether Trilogy failed to pay them the full amount of overtime compensation earned.

74. Plaintiff's claims are typical of the claims of the State Law Classes in the following ways, without limitation: (a) Plaintiff is a member of the State Law Classes; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Classes; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the State Law Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the members of the State Law Classes; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the members of State Law Classes.

75. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The State Law Classes are readily identifiable from Trilogy's employment records. Prosecution of separate actions by individual members of the State Law Classes would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Trilogy.

76. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many

of the members of the State Law Classes, while substantial, are not great enough to enable them to maintain separate suits against Trilogy.

77. Without a class action, Trilogy will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the State Law Classes. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiffs and the FLSA Collective)**

78. All previous paragraphs are incorporated as though fully set forth herein.

79. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

80. Trilogy is subject to the wage requirements of the FLSA because Trilogy is an "employer" under 29 U.S.C. § 203(d).

81. At all relevant times, each of Trilogy was, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

82. During all relevant times, the members of FLSA Collective, including Plaintiffs, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

83. Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

84. Plaintiffs and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

85. Trilogy fails to properly compensate Plaintiffs and the FLSA Collective for all hours worked when they worked in excess of forty (40) hours per week by auto-deducting thirty (30) minutes from Plaintiffs' and the FLSA Collective's paychecks even when they worked through their meal breaks.

86. Trilogy fails to create, keep, and preserve accurate records with respect to work performed by Plaintiffs and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

87. Trilogy's actions violated and continue to violate the FLSA and its implementing regulations.

88. In violating the FLSA, Trilogy has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

89. Pursuant to 29 U.S.C. § 216(b), employers such as Trilogy, who fail to pay employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, *et seq*.**
**(On Behalf of Plaintiff Valenzuela and the Indiana Class)**

90. All previous paragraphs are incorporated as though fully set forth herein.

91. Plaintiff Valenzuela and Indiana Class Members are currently employed by Trilogy or were previously employed by Trilogy and voluntarily quit.

92. At all relevant times, Plaintiff Valenzuela and Indiana Class Members have been entitled to the rights, protections, and benefits provided under the IWPS, Ind. Code § 22-2-5-1, *et seq.*

93. At all relevant times, Plaintiff Valenzuela and other Indiana Class Members were "employees" of Trilogy within the meaning of the IWPS. Ind. Code § 22-2-5-1(a).

94. Trilogy is subject to the IWPS requirements because Trilogy is an employer under Ind. Code § 22-2-2-3.

95. Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee … the amount due the employee." Ind. Code § 22-2-5-1(a).

96. Plaintiff Valenzuela and Indiana Class Members seek to recover under the IWPS the difference between what they were paid by Trilogy for regular and overtime hours worked and the amount to which they were entitled by law.

97. Trilogy has not paid Plaintiff Valenzula and other Indiana Class Members who are currently employed by Trilogy or who voluntarily left their employ their due and owing wages that they are entitled to by operation of law.

98. By failing to compensate Plaintiff Valenzuela and Indiana Class Members who are currently employed by Trilogy or who voluntarily left their employ for their hours worked within the necessary time frame after they became due, Trilogy is also liable to Plaintiff and Indiana Class Members under the IWPS.

99. Separately, Trilogy also fails to pay Plaintiff Valenzuela and Indiana Class Members their wages due on their next and usual payday.

100. Trilogy' violations of the IWPS are willful and are not actions and omissions made in good faith.

101. Plaintiff Valenzuela and Indiana Class Members are entitled to their wages due, double the amount of wages due, and reasonable attorneys' fees and costs as required by Ind. Code

§ 22-2-5-2.

**COUNT III**
**Unjust Enrichment Under Indiana Law**
**(On Behalf of Plaintiff Valenzuela and the Indiana Unjust Enrichment Class)**

102. All previous paragraphs are incorporated as though fully set forth herein.

103. This count is brought against Trilogy pursuant to the common law doctrine of unjust enrichment.

104. Indiana courts articulate three elements for [unjust enrichment] claims: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Indiana Family & Soc. Servs. Admin.,* 964 N.E. 2d 784, 791 (Ind. 2012).

105. Trilogy has received and benefited from Plaintiff Valenzuela's uncompensated labors, along with that of the other members of the Indiana Unjust Enrichment Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

106. At all relevant times hereto, Trilogy devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff Valenzuela and Indiana Unjust Enrichment Class Members without paying for all hours worked under forty (40) in a workweek, known as "gap time" or "straight time."

107. Contrary to all good faith and fair dealing, Trilogy induced Plaintiff Valenzuela and Class Members to perform work while failing to pay compensation for all hours worked for weeks in which Plaintiff Valenzuela and the Indiana Unjust Enrichment Class worked under forty (40) hours a week as required by law.

108. By reason of having secured the work and efforts of Plaintiff Valenzuela and the

Indiana Unjust Enrichment Class without paying "straight time" or "gap time" compensation as required by law, Trilogy enjoyed reduced overhead with respect to its labor costs, and therefore, realized additional earnings and profits to their own benefit and to the detriment of Plaintiff Valenzuela and the Indiana Unjust Enrichment Class. Trilogy retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

109. Accordingly, Plaintiff Valenzuela and the Indiana Unjust Enrichment Class are entitled to judgment in an amount equal to the benefits unjustly retained by Trilogy.

**COUNT IV**
**Violation of KWHA – Nonpayment of Wages**
**(On Behalf of Plaintiff Valenzuela and the Kentucky Class)**

110. All previous paragraphs are incorporated as though fully set forth herein.

111. Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* Ky. Rev. Stat. §§ 337.275, *et seq*.

112. Kentucky state law also requires that employees receive overtime compensation "not less than one and one-half (1½) times" the employee's regular rate of pay for all hours worked over forty in one workweek. Ky. Rev. Stat. § 337.285. *See also* 803 Ky. Admin. Regs. 1:060.

113. During all relevant times, Trilogy was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

114. During all relevant times, Plaintiff Valenzuela and the Kentucky Class were covered employees entitled to the protections of the KWHA. *See* Ky. Rev. Stat. § 337.010(1)(e).

115. Plaintiff Valenzuela and the Kentucky Class Members are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. *See* Ky. Rev. Stat. § 337.285(2).

116. Trilogy has violated the KWHA with respect to the Plaintiff Valenzuela and the Kentucky Class by, *inter alia*, failing to compensate them for all hours worked at their normal hourly rate (for time worked under forty (40) hours per week) and at one and one-half their "regular rate" for all hours worked in a workweek in excess of forty hours.

117. In violating the KWHA, Trilogy acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

118. Trilogy must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages, because they failed to pay employees the required amount of wages and overtime at the statutory rate. Ky. Rev. Stat. § 337.385. Plaintiff Valenzuela and Kentucky Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended. Ky. Rev. Stat. § 337.385.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Indiana Class, Indiana Unjust Enrichment Class, and Kentucky Class;

d. Back pay damages and prejudgment interest to the fullest extent permitted under the law;

e. Liquidated damages to the fullest extent permitted under the law;

f. Punitive damages as permitted under the law;

g. Litigation costs, expenses and attorneys' fees to the fullest extent permitted

under the law; and

h. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on all claims and issues.

Dated: March 3, 2026

Respectfully submitted,

/s/Mark N. Foster
Mark Foster
**LAW OFFICE OF MARK N. FOSTER**
P.O. Box 869
Madisonville, KY 42431
Tel.: (270) 213-1303
mfoster@marknfoster.com

Camille Fundora Rodriguez*
Olivia Lanctot*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4620
crodriguez@bergermontague.com
olanctot@bergermontague.com

Mariyam Hussian*
**BERGER MONTAGUE PC**
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
Telephone: (773) 666-4316
mhussain@bergermontague.com

*Attorneys for Plaintiffs and the*
*Proposed FLSA Collective and State Law Classes*

* *pro hac vice forthcoming*